UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

DAMIEN GUARNIERE,                                    **COMPLAINT**

                    Plaintiff,                       Demand for Trial by Jury

      -against-                                      Docket No. 21-cv-1739

CITY OF NEW YORK, OMAR IBRAHIM and
 JOHN or JANE DOE 1-10,

                    Defendants.
---------------------------------------------------------X

      Plaintiff, Damien Guarniere, by and through the undersigned attorneys, Sim & DePaola,

LLP, for his complaint against the Defendants, City of New York, Omar Ibrahim and John or Jane

Doe 1-10, alleges and states as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action, in which Plaintiff seeks relief vis-à-vis Sections 1981, 1983,

1985, 1986 and 1988 of Title 42 of the United States Code for the violation of his civil rights

protected by the First, Fourth, and Fourteenth Amendments to the Constitution of the United

States, the constitution of the State of New York and the laws of the City and State of New York.

2.    The following claims arise from a May 16, 2020 incident, in which defendants, acting

under color of state law, unlawfully stopped, searched, seized, detained and plaintiff without a

valid judicially authorized arrest warrant, reasonable suspicion, probable cause or any other legal

justification to do so.

3.    Defendants falsely arrested Mr. Guarniere for violating Section 10-125(b) of the

Administrative Code of the City of New York.

4.      As a result, plaintiff was maliciously prosecuted and denied his rights to fair trial and due process, until the summons proceedings were terminated in his favor, via the unconditional and outright dismissal of all adverse charges on June 25, 2020.

5.      The above referenced acts caused Mr. Guarniere to be deprived of his liberty, his rights to be free from unreasonable searches and seizures, in addition to be afforded due process and equal protection of the laws.

6.      Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, an award of costs and attorney's fees, and such other and further relief, as this Court may deem just and proper.

## JURISDICTION

7.      This action arises under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, under Sections 1981, 1983, 1985, 1986 and 1988 of Title 42 of the United States Code, the constitution of the State of New York and by virtue of the laws of the City and State of New York. 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988. 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988.

8.      The jurisdiction of this Court is predicated upon Sections 1331, 1343(a)(3), 1343(a)(4), 1367(a) of Title 28 of the United States Code and the doctrine of supplemental jurisdiction. 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4) and 1367(a).

## VENUE

9.      Venue is laid within the Southern District of New York, in that Defendant City of New York is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. §§ 1391(b) and 1391(c).

## PARTIES

10.     Plaintiff, Mr. Damien Guarniere ("Mr. Guarniere"), is an African American male, who resides within the County, City and State of New York.

11.     The Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

12.     At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives, and supervisory officers as well as the individually named Defendants herein.

13.     In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

14.     Defendant, Omar Ibrahim ("Ibrahim"), was, at all relevant times herein, a police officer or detective employed by the NYPD, under Tax Reg. No. 963075, and, as such, was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Ibrahim was, at all relevant times herein, believed to be assigned to the 19th Precinct of the NYPD. Defendant Ibrahim is being sued in his individual and official capacities.

15.     At all relevant times, Defendants, John or Jane Doe 1-10, were police officers, detectives, supervisors, policymakers or officials employed by the NYPD. At this time, Plaintiff is not privy to the true identities of defendants, John or Jane Doe 1-10, as such knowledge is within the exclusive possession of defendants.

16.     At all relevant times herein, Defendants, John or Jane Doe 1-10, were acting as agents, servants and employees of the City of New York, the NYPD. Defendants, John or Jane Doe 1- 10, are being sued in their individual and official capacities.

17.     At all relevant times herein, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL CHARGES

18.     On May 16, 2020, at approximately 10:00 p.m., Mr. Guarniere was in the vicinity of 1633 Second Avenue, within the County, City and State of New York.

19.     Mr. Guarniere had not committed any crimes or violations of the law and had not been accused of such by any identified civilian witnesses.

20.     At said date, time and place, Mr. Guarniere began to lawfully record the activities of various NYPD police officers, including defendant Ibrahim and John or Jane Doe 1-10, with his cellular phone.

21.     Despite recording defendants' activities without causing any disruption or obstruction, Mr. Guarniere was aggressively approached by defendants, including Ibrahim and John Doe 1, who demanded that Mr. Guarniere cease recording defendants' activities, while holding their arms outstretched toward Mr. Guarniere in a threatening and intimidating manner.

22.     Defendants, including Ibrahim and John Doe 1, then unlawfully demanded that Mr. Guarniere produce his government issued identification, because said defendants were without any reasonable suspicion or probable cause to believe that Mr. Guarniere had committed any crime or violation of the law.

23.     When Mr. Guarniere refused to produce his identification, defendants, including Ibrahim and John Doe 1, immediately struck Mr. Guarniere's hand, causing the beverage that he had recently purchased to fall to the ground.

24.     Mr. Guarniere was unlawfully stopped, seized and arrested by defendants, including Ibrahim and John Doe 1, who grabbed Mr. Guarniere's body and arms to prevent him from moving, while informing him that he was under arrest, despite lacking any probable cause to believe that Mr. Guarniere had committed any crime or arrestable offense, including the possession of an open container containing an alcoholic beverage in a public place in violation of Section 10-125 of the Administrative Code of the City of New York.

25.     Defendants, including Ibrahim and John Doe 1, lacked any probable cause or reasonable suspicion to stop, seize or arrest Mr. Guarniere, because defendants never confirmed or otherwise verified that the liquid within Mr. Guarniere's cup was, in fact, alcoholic in nature.

26.     Defendants, including Ibrahim and John Doe 1, further lacked any probable cause or reasonable suspicion to stop, seize or arrest Mr. Guarniere, because defendants never confirmed or otherwise verified that the location on the sidewalk where Mr. Guarniere was imbibing his beverage was not within the premises or private property of any establishments "duly licensed for the sale and consumption of alcoholic beverages" and thus not defined as "a public place" by the subject statute, Section 10-125 of the Administrative Code of the City of New York, which does not prohibit the consumption of alcoholic beverages on the property or premises of establishments "duly licensed for the sale and consumption of alcoholic beverages."

27.     Defendants, including Ibrahim and John Doe 1, further lacked any probable cause or reasonable suspicion to stop, seize or arrest Mr. Guarniere, because defendants never confirmed or otherwise verified that the location on the sidewalk where Mr. Guarniere was imbibing his

beverage was not part of "a block party, feast or similar function for which a permit has been obtained," since the subject statute does not apply to such locations.

28.     To contrary, however, the facts then known to defendants, including Ibrahim and John Doe 1, demonstrate that Section 10-125 of the Administrative Code of the City of New York did not apply to the location where Mr. Guarniere was imbibing his beverage because several local establishments were openly selling alcoholic beverages to the public in the immediate vicinity, within plain view of numerous police officers who permitted such activities to proceed without issue.

29.     Defendants, including, Ibrahim and John Doe 1, then proceeded to illegally search Mr. Guarniere's person by rifling through clothing and pulling out his pockets, despite the clear lack of any indicia of secreted contraband or unlawful activity.

30.     Defendants, including Ibrahim and John Doe 1, then violently contorted Mr. Guarniere's arms behind his back and proceeded to affix metal handcuffs to his wrists in an excessively tight fashion, which caused him to suffer substantial injury, pain and discomfort.

31.     Defendants, including Ibrahim and John Doe 1, subjected Mr. Guarniere to further assaults and batteries when they lifted him from the ground before proceeding to forcibly slam him head-first into the concrete sidewalk while his hands were handcuffed behind his back, thus preventing him from bracing himself or protecting his head from the impending violent impact with the concrete ground, causing Mr. Guarniere to sustain numerous physical injuries and substantial pain to his head, brain, neck, back, chest, shoulders and ribs, as well as lose consciousness and suffer detrimental effects to his vision and cognitive functioning abilities, with the loss of vision and cognitive dysfunctions still persisting and believed to be permanent.

32.     Said application of excessive force constituted the completed torts of assault and battery by defendants, including Ibrahim and John Doe 1.

33.     Due to the injuries inflicted upon Mr. Guarniere by defendants, including Ibrahim and John Doe 1, while still rear handcuffed in their custody and control, Mr. Guarniere was immediately rushed via ambulance from the scene of his wrongful arrest to Metropolitan Hospital, where he was treated for his myriad injuries.

34.     Mr. Guarniere was involuntarily detained by defendants, including Ibrahim and John Doe 1, over the course of two (2) days, until his eventual release from custody on, or about, May 17, 2020.

35.     At some point prior to Mr. Guarniere's release from physical custody, defendant Ibrahim issued Mr. Guarniere a criminal court summons, under Summons Number 4442209339, for violating Section 10-125(b) of the Administrative Code of the City of New York.

36.     Defendants, including, Ibrahim and John Doe 1, falsely accused Mr. Guarniere of violating Section 10-125(b) of the Administrative Code of the City of New York, despite no actual evidence to support this unfounded allegation.

37.     Defendants, including, Ibrahim and John Doe 1, fabricated fictitious events and occurrences, which were then falsely attributed to Mr. Guarniere, namely that Mr. Guarniere was observed to be in possession of an open container of alcohol in a public place, when defendants knew such observations to be complete fabrications.

38.     Mr. Guarniere asserts that Defendants, including Ibrahim and John Doe 1, falsely arrested, wrongfully detained and maliciously prosecuted him with the full knowledge that he had committed no crimes or violations of the law.

39.     Mr. Guarniere, therefore, asserts that due to the clear absence of any viable probable cause to warrant his criminal prosecution, at any point, he was denied his rights to fair trial and due process and was maliciously prosecuted from the moment defendants, including Ibrahim and John Doe 1, issued him the summons for violating Section 10-125(b) of the Administrative Code of the City of New York, until the summons proceedings were irrefutably terminated in Mr. Guarniere's favor, when the summons was dismissed, due to the lack of probable cause to believe that he was guilty or that the prosecution would succeed.

40.     At all times relevant hereto, the defendants, including, Ibrahim and John Doe 1-10, were involved in the decision to stop, seize, arrest and prosecute Mr. Guarniere without reasonable suspicion or probable cause, or failed to intervene when they observed others doing so in the absence of any reasonable suspicion or probable cause.

41.     At all times relevant hereto, the defendants, including, Ibrahim and John Doe 1-10, subjected Mr. Guarniere to excessive force, or failed to intervene when they observed others subjecting him to excessive force.

42.     Mr. Guarniere asserts that the aforementioned unlawful acts committed by defendants are representative of the City of New York's and NYPD's pervasive policy, custom or pattern and practice of falsely arresting individuals for refusing to provide identification or recording the activities of police officers.

43.     Defendants, including Ibrahim and John Doe 1, perpetrated multiple overt acts in furtherance of their obviously discriminatory inclinations against Mr. Guarniere, namely the stop, searches, assaults, batteries, seizure, arrest, and malicious prosecution against plaintiff, despite the absence of any evidence to justify such conduct.

44.     Defendants, including Ibrahim and John Doe 1, unlawfully stopped, questioned, searched, seized, arrested, and maliciously prosecuted plaintiff, due solely to defendants' desire to prevent Mr. Guarniere from exerting his First Amendment right to engage in protected speech and activities, such as the recording of police officers' conduct, refusal of an unlawful request to provide identification to officers, the patronization of local establishments and the consumption of lawfully purchased beverages from said local establishments.

45.     Defendants, including Ibrahim and John Doe 1, possessed no valid reason to approach, stop, question, search or arrest plaintiff, which gives rise to the strong inference that such conduct resulted from defendants' unjust motivations or proclivities, including retaliation for Mr. Guarniere's act of recording police officers, including Ibrahim and John Doe 1-10.

46.     Defendants, including Ibrahim and John Doe 1, subjected Mr. Guarniere to disparate treatment compared to other individuals similarly situated, because defendants did not stop, accuse, seize or arrest any of the other multiple pedestrians, who were engaged in activity identical to the kind that resulted in plaintiff's illegal search and seizure, namely drinking from containers purchased from local establishments duly licensed for the sale and consumption of such.

47.     Defendants, including Ibrahim and John Doe 1, engaged in a conspiracy to falsely arrest and maliciously prosecute Mr. Guarniere by personally conferring with each other, regarding the fabrication of the aforementioned non-existent evidence the suppression of exculpatory evidence, as well the manner and means by which said fabrications would be forwarded to prosecutors.

48.     Mr. Guarniere asserts that the defendants, including Ibrahim and John Doe 1, who violated his civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy

or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact with their police officers.

49.     The individually named defendants herein, as well as other officers serving in the employ of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

50.     *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Also detailed, is the NYPD's obstinate refusal to effectuate corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated via incontrovertible evidence, such as video evidence.

51.     The constitutionally repugnant behavior that persists within the ranks of the NYPD results from the NYPD's own policies, rules and procedures, namely the NYPD's incredibly flawed and illegal use of arrest quotas. Despite its illegality, such policies remain systemic throughout the NYPD and its individual commands. The NYPD, however, was not content in compelling its officers to effect as many arrests as possible, regardless of the presence of any legal right to do, it

promulgated various subsets of quotas, which are predicated on race, color or ethnicity. Additionally, the NYPD, its supervisors or policymakers would assign varying point values to arrests, which were, again, impermissibly based upon the arrestee's race, color or ethnicity. Unsurprisingly, officers would be better rewarded for minority arrests or summonses. This egregious conduct has reported by numerous respected media outlets and publications and has even formed the basis for federal lawsuits against the City and the NYPD, which were commenced by its own employee officers.

52.     On June 17, 2020, the *New York Daily News* published an article, by Graham Rayman, entitled "Brooklyn Cop Claims he was Punished for not Meeting Arrest Quotas, Refusing to Take Responsibility for Controversial Arrest in which he Wasn't Involved," describing allegations from an NYPD Police Officer, Terrence Dickerson, that he was retaliated against by the NYPD for refusing to adhere to mandatory racially based arrest quotas and for his refusal to accept responsibility for a controversial and publicized arrest via the excessive force, despite the fact that he was not even at the scene.

53.     Another article with a title that speaks for itself, also published by the *New York Daily News*, on December 5, 2019, and written by Graham Rayman, is entitled "Ex-Cop Details NYPD 'Collar Quotas'—Arrest Black and Hispanic Men, 'No Cuffs on Soft Targets' of Jews, Asians, Whites: Court Docs."

54.     *The New York Times*, on December 6, 2019, published an article by Joseph Goldstein and Ashley Southall, entitled "I Got Tired of Hunting Black and Hispanic People," which revealed a disturbing account from a different NYPD Police Officer, Anthony Diaz, describing a police force that measures the quality of police work by the quantity of minority arrests.

55.    On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting the fact that the substantiation of a claim against an officer will invariably rely on the presence of incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

56.    On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana. It should not require an article in *The New York Times* to call attention to such patently disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

57.    On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least

three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

58.     Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came from the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

59.     The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

60.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in Mr. Guarniere's arrest without probable cause.

61.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

62.     Defendants' actions, pursuant to Mr. Guarniere's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of Plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with Defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

63.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of Defendants, the NYPD and City of New York.

64.     Upon information and belief, the personnel files, records and disciplinary histories of the officer Defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer Defendants were unfit for employment as NYPD officers, or

for employment in general, and that the probability of the individually named Defendants committing similar violations in the future was extremely high.

65.     Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of Defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including defendants, Ibrahim and John Doe 1.

66.     Upon information and belief, the individually named Defendants have combined to be named as Defendants in numerous lawsuits that have accused them of committing violations similar or identical to those alleged herein, all of which have resulted no disciplinary or corrective action of any kind.

67.     Upon information and belief, the NYPD and City of New York and have failed, or outright refused, to correct the individually named Defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct

68.     The aforementioned acts of defendants, including the City of New York, Omar Ibrahim and John or Jane Doe 1-10, directly or proximately resulted in the deprivation or violation of Mr. Guarniere's civil rights, as enumerated and set forth by the First, Fourth, Fifth, and Fourteenth

Amendments to the Constitution of the United States, the constitution of the State of New York and the laws of the City and State of New York.

69.     As direct or proximate results of said acts, Mr. Guarniere was caused to suffer the loss of his liberty, irreparable reputational harm, the loss of earnings and potential earnings, substantial and permanent physical and psychological injuries, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience and anxiety.

## FIRST CAUSE OF ACTION
Protected Speech or Activity Retaliation Claim Under
New York State Law

70.     The above paragraphs are here incorporated by reference as though fully set forth.

71.     Plaintiff engaged in speech and activities that were protected by Article I, Section 8, of the constitution of the State of New York.

72.     Defendants committed impermissible or unlawful actions against plaintiff that were motivated or substantially caused by plaintiff's constitutionally protected speech or activities.

73.     Defendants' retaliatory actions against plaintiff resulted in the deprivation of his liberty and the initiation of criminal charges against him.

74.     Defendants' retaliatory actions adversely affected plaintiff's protected speech or activities by physically or procedurally preventing him from further pursuing said protected speech or activities or by chilling his desire to further participate or engage in such protected speech or activities.

75.     Accordingly, plaintiff's right to engage in protected speech and activities, guaranteed and protected by Article I, Section 8, of the constitution of the State of New York, was violated by defendants.

76.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoings, under the doctrine of *respondeat superior*.

77.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

<u>**SECOND CAUSE OF ACTION**</u>
First Amendment Retaliation Claim Under
42 U.S.C. § 1983 Against Individual Defendants

78.     The above paragraphs are here incorporated by reference as though fully set forth.

79.     Plaintiff engaged in speech and activities that were protected by the First Amendment to the Constitution of the United States.

80.     Defendants committed impermissible or unlawful actions against plaintiff that were motivated or substantially caused by plaintiff's constitutionally protected speech or activities.

81.     Defendants' retaliatory actions against plaintiff resulted in the deprivation of his liberty and the initiation of criminal charges against him.

82.     Defendants' retaliatory actions adversely affected plaintiff's protected speech or activities by physically or procedurally preventing him from further pursuing said protected speech or activities, or by chilling his desire to further participate or engage in such protected speech or activities.

83.     Accordingly, plaintiff's right to engage in protected speech and activities, as guaranteed and protected by the First Amendment to the Constitution of the United States, was violated by defendants.

84.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
Unlawful Interference with Recording a Law Enforcement Activity Under
New York State Law

85.     The above paragraphs are here incorporated by reference as though fully set forth.

86.     Plaintiff, while not under arrest or in the custody of a law enforcement official, was lawfully recording law enforcement activity without physically interfering with law enforcement activity or otherwise constituting a crime defined in the penal law involving obstructing governmental administration.

87.     Defendants unlawfully interfered with plaintiff's right to record law enforcement activity by threatening plaintiff for recording such activity, commanding plaintiff to cease recording, stopping, seizing, searching, ticketing or arresting plaintiff for recording, or unlawfully seizing property or instruments used by that person to record, unlawfully destroying, or seizing a recorded image, or copying such a recording without the consent of plaintiff or approval from an appropriate court.

88.     Accordingly, plaintiff's right to record law enforcement activities, pursuant to Section 79-P of the New York Civil Rights Law, was violated by defendants.

89.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoings, under the doctrine of *respondeat superior*.

90.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
Unlawful Search & Seizure Under
New York State Law

91.     The above paragraphs are here incorporated by reference as though fully set forth.

92.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

93.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

94.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

95.     The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

96.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to Article I, Section 12, of the constitution of the State of New York and Article II, Section 8, of the New York Civil Rights Law.

97.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

98.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## <u>FIFTH CAUSE OF ACTION</u>
Unlawful Search & Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

99.     The above paragraphs are here incorporated by reference as though fully set forth.

100.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

101.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

102.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

103.   The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

104.   Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the Constitution of the United States.

105.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
False Arrest & False Imprisonment Under
New York State Law

106.   The above paragraphs are here incorporated by reference as though fully set forth.

107.   Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

108.   Plaintiff was conscious of his confinement.

109.   Plaintiff did not consent to his confinement.

110.   Plaintiff's arrest and false imprisonment was not otherwise privileged.

111.   Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

112.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
False Arrest & False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

113.   The above paragraphs are here incorporated by reference as though fully set forth.

114.   The Defendants violated the Fourth and Fourteenth Amendments to the Constitution of the United States by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

115.   The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

116.   At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

117.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Assault & Battery Under
New York State Law

118.   The above paragraphs are here incorporated by reference as though fully set forth.

119.   Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful or offensive touching.

120.   Defendants engaged in and subjected plaintiff to immediate harmful or offensive touching and battered him without his consent.

121.   Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

122.   As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

123.   The above paragraphs are here incorporated by reference as though fully set forth.

124.   The Defendants violated Plaintiff's rights, under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

125.    Defendants engaged in and subjected Plaintiff to immediate harmful or offensive touching and battered him without his consent.

126.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Malicious Prosecution Under
New York State Law

127.    The above paragraphs are here incorporated by reference as though fully set forth.

128.    Defendants initiated the prosecution against Plaintiff.

129.    Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution would succeed.

130.    Defendants acted with malice, which may be inferred in the absence of probable cause.

131.    The prosecution was terminated in Plaintiff's favor, when all adverse charges were unconditionally and outright dismissed, due to the lack of probable cause to believe that plaintiff had committed a crime or that the prosecution would succeed.

132.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

133.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

134.    The above paragraphs are here incorporated by reference as though fully set forth.

135.    Defendants initiated the prosecution against Plaintiff.

136.    Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

137.    Defendants acted with malice, which may be inferred in the absence of probable cause.

138.    The prosecution was terminated in Plaintiff's favor, when all adverse charges were unconditionally dismissed, due to the lack of probable cause to believe that plaintiff had committed a crime or that the prosecution would succeed.

139.    Accordingly, Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights.

140.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWELFTH CAUSE OF ACTION
Malicious Abuse of Process Under
New York State Law

141.    The above paragraphs are here incorporated by reference as though fully set forth.

142.    Defendants arrested, detained and caused a criminal prosecution to be initiated against plaintiff to compel the compliance or forbearance of some act.

143.    Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

144.    Defendants intended to inflict substantial harm upon plaintiff.

145.    Defendants acted to achieve a collateral purpose, beyond or in addition to plaintiff's criminal prosecution.

146.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

147.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## THIRTEENTH CAUSE OF ACTION
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

148.    The above paragraphs are here incorporated by reference as though fully set forth.

149.    Defendants arrested, detained and caused a criminal prosecution to be initiated against plaintiff to compel the compliance or forbearance of some act.

150.    Defendants had no excuse or justification to forcibly detain and initiate a prosecution against plaintiff, especially with the absence of any cognizable probable cause.

151.    Defendants intended to inflict substantial harm upon plaintiff.

152.    Defendants acted to achieve a collateral purpose, beyond or in addition to plaintiff's criminal prosecution.

153.    Defendants' actions therefore resulted in deprivations to plaintiff's rights, pursuant to the Fourth and Fourteenth Amendments.

154.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION
Denial of Right to Due Process Under
New York State Law

155.    The above paragraphs are here incorporated by reference as though fully set forth herein.

156.    Defendants fabricated false evidence to be used against plaintiff that was likely to influence a jury's decision.

157.    Defendants forwarded said false information to prosecutors.

158.    Defendants' actions resulted in post-arraignment deprivation to plaintiff's liberty and freedom of movement.

159.    Accordingly, defendants violated plaintiff's right to a fair trial, pursuant to Article I, Sections 1, 2 & 6, of the constitution of the State of New York, and Article II, Section 12, of the New York State Civil Rights Law.

160.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

161.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FIFTEENTH CAUSE OF ACTION
Denial of Rights to Fair Trial & Due Process Under
42 U.S.C. § 1983 Against Individual Defendants

162.    The above paragraphs are here incorporated by reference as though fully set forth.

163.    Defendants fabricated false evidence to be used against plaintiff that was likely to influence a jury's decision.

164.    Defendants forwarded said false information to prosecutors.

165.    Defendants' actions resulted in post-arraignment deprivations to plaintiff's liberty and freedom of movement.

166.    Accordingly, defendants violated Plaintiff's rights, pursuant to the Fourth, Fifth and Fourteenth Amendments to Constitution of the United States.

167.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTEENTH CAUSE OF ACTION
Violation of Victims of Violent Crime Protection Act under
New York City Law

168.    The above paragraphs are here incorporated by reference as though fully set forth herein.

169.    Defendants' acts or series of acts constituted a misdemeanor or felony against plaintiff, as

defined in state or federal law which presented a serious risk of physical injury to plaintiff, whether or not such acts have actually resulted in criminal charges, prosecution or conviction.

170.    Accordingly, defendants committed a crime of violence against plaintiff and violated plaintiff's rights, pursuant to Section 10-403 of the Administrative Code of the City of New York.

171.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

172.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTEENTH CAUSE OF ACTION
Biased Based Profiling under
New York City Law

173.    The above paragraphs are here incorporated by reference as though fully set forth herein.

174.    Defendants impermissibly relied upon Plaintiff's actual or perceived race, color, national origin, ancestry, citizenship status, gender, religion, religious practice, age, disability or sexual orientation, as the determinative factor in initiating law enforcement action against Plaintiff, rather than Plaintiff's behavior or other information or circumstances that would link Plaintiff to suspected unlawful activity.

175.    Accordingly, defendants violated plaintiff's rights, pursuant to Section 14-151 of the Administrative Code of the City of New York.

176.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

177.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTEENTH CAUSE OF ACTION

Deprivation of Rights & Denial of Equal Protection of the Laws under
New York State law

178.     The above paragraphs are here incorporated by reference as though fully set forth herein.

179.     Plaintiff, as an African American male, is a member of a racial minority and protected class.

180.     Defendants discriminated against Plaintiff on the basis of his race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation.

181.     Defendants also engaged in the selective treatment of Plaintiff, in comparison to others similarly situated.

182.     Defendants' discriminatory treatment of Plaintiff was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiff for the exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

183.     Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

184.     Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

185.     Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

186.     Accordingly, defendants violated plaintiff's rights, pursuant to Article I, Section 11, of the constitution of the State of New York, Article VII, Section 79-N, of the New York Civil Rights Law and Section 296, paragraph 13, of the New York Executive Law.

187.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

188.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINETEENTH CAUSE OF ACTION
Deprivation of Rights & Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 & 1983 Against Individual Defendants

189.    The above paragraphs are here incorporated by reference as though fully set forth herein.

190.    Plaintiff, as an African American male, is a member of a racial minority and protected class.

191.    Defendants discriminated against Plaintiff on the basis of his race, color or ethnicity.

192.    Defendants engaged in the selective treatment of Plaintiff in comparison to others similarly situated.

193.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiff for the exertion of his Constitutional rights, or malicious or bad faith intent to injure Plaintiff.

194.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

195.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

196.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

197.    Accordingly, defendants violated plaintiff's rights, under the Fourteenth Amendment.

198.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTIETH CAUSE OF ACTION
Conspiracy to Interfere with Civil Rights & Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1983, 1985 & 1986 Against Individual Defendants

199.    The above paragraphs are here incorporated by reference as though fully set forth herein.

200.    Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of his rights to engage in protected speech or activities, to be free from unreasonable searches and seizures, to be afforded a fair trial, to not be deprived of his liberty or property without due process of law, or of

the privileges and immunities under the laws and constitutions of the United States and of the State of New York.

201.    Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

202.    As a result, Plaintiff sustained injuries to his person, was deprived of his liberty or was deprived of rights or privileges of citizens of the United States.

203.    Defendants' conspiracy was motivated by a desire to deprive Plaintiff of his civil rights or because of some racial, otherwise class-based, invidious or discriminatory animus.

204.    The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or in process of being committed, possessed the power to prevent or aid in the prevention of the conspiratorial objective, and neglected to do so.

205.    Accordingly, defendants violated Plaintiff's rights, pursuant to the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

206.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## <u>TWENTY-FIRST CAUSE OF ACTION</u>
### Failure to Intervene Under
### New York State Law

207.    The above paragraphs are here incorporated by reference as though fully set forth herein.

208.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

209.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

210.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTY-SECOND CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

211.    The above paragraphs are here incorporated by reference as though fully set forth herein.

212.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

213.    Accordingly, the Defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments.

214.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTY-THIRD CAUSE OF ACTION
Negligent Hiring, Training, Retention & Supervision Under
New York State Law

215.    The above paragraphs are here incorporated by reference as though fully set forth.

216.    Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

217.    Defendant City breached those duties of care.

218.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

219.    Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

220.    Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

221.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**TWENTY-FOURTH CAUSE OF ACTION**
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

222.    The above paragraphs are here incorporated by reference as though fully set forth.

223.    Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

224.    Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

225.    Defendant City and its policymakers failed to provide adequate training or supervision to their subordinates to such an extent that is tantamount to a deliberate indifference toward the rights of those who may come into contact with defendant City's employees.

226.    Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

227.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

228.    Defendant City's conduct caused the violation of plaintiff's civil rights, pursuant to Constitution of the United States.

229.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)    In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)    Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)    Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)    Awarding Plaintiff reasonable attorneys' fees and costs, pursuant to Section 1988 of Title 42 of the United States Code; the New York State Civil Rights and Executive Laws; in addition to the Administrative Code of the City of New York;

e)    Together with such other and further relief, as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 26, 2021

/s/ *Samuel C. DePaola*
Samuel C. DePaola, Esq.
Bar Number: SD0622
**SIM & DEPAOLA, LLP**
*Attorneys for Plaintiff*
4240 Bell Blvd – Ste 201
Bayside, NY 11361
T: (718) 281-0400
F: (718) 631-2700
sdepaola@simdepaola.com